# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2370
No. 18-2568

_____

Southern Bakeries, LLC

*Petitioner/Cross-Respondent*

v.

National Labor Relations Board

*Respondent/Cross-Petitioner*

_____

Review of a Decision and Order of the
National Labor Relations Board

_____

Submitted: April 17, 2019
Filed: September 11, 2019

_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

After an evidentiary hearing, a National Labor Relations Board Administrative Law Judge (ALJ) determined that Southern Bakeries, LLC, (i) violated Sections 8(a)(1) and (3) of the National Labor Relations Act (NLRA) by relying on a prior unlawful discipline in disciplining and terminating Lorraine Marks Briggs, and designating her "not for rehire"; and (ii) violated Section 8(a)(1) by directing Cheryl

Muldew not to discuss her discipline with other employees and then telling her she was being discharged in part for doing so. See 29 U.S.C. § 158(a)(1) and (3). Southern Bakeries appealed those rulings to the Board, which substantially affirmed the ALJ's decision. Southern Bakeries petitions to set aside the Board's Decision and Order; the General Counsel cross-petitions to enforce the Order. Applying the well-established deferential standard of review, we enforce the Board's Order in part.

## I. Marks Briggs.

**A. Background.** Southern Bakeries acquired a commercial bakery in Hope, Arkansas in 2005, retaining most employees and recognizing the existing union. Beginning in 2009, employees filed three decertification petitions with the Board, expressing dissatisfaction with the union. Each time, the union responded with unfair labor practice charges, and no election was held. The protracted dispute resulted in Southern Bakeries withdrawing recognition of the union in July 2013, and the Board's General Counsel filing a complaint charging Southern Bakeries with numerous unfair labor practices. Among the charges was that the company violated Sections 8(a)(1) and (3) on May 30, 2013 when it issued a "final written warning and suspension" to Marks Briggs, a long-time employee and active union supporter, after she left her production line to use the restroom without giving proper notice.

Marks Biggs testified at a February 2014 hearing attended by Rickey Ledbetter, Southern Bakeries' vice-president and general manager. The ALJ issued his decision in July 2014, concluding the General Counsel proved that union animus was a substantial or motivating factor in Marks Briggs's discipline, and that Southern Bakeries failed to prove it would have taken the same action even in the absence of her protected union activity.[1] The ALJ's proposed remedy included: "Within 14 days

---

[1]This format for allocating the burden of proof in § 8(a)(1) and (3) cases was adopted by the Board in Wright Line, 251 NLRB 1083 (1980), enforced, 662 F.2d

from the date of the Board's Order, remove from [Southern Bakeries'] files any reference to the unlawful disciplinary investigations, written warning . . . and suspension concerning Marks [Briggs and] . . . notify [her] that such discipline will not be used against [her] in any way." Southern Bakeries, LLC, No. 15-CA-101311, slip op. at 34, 2014 WL 35673206 at p.25 (N.L.R.B. July 17, 2014).

Southern Bakeries appealed this ruling to the Board and then to this court. The Board upheld this part of the ALJ's decision, including the above-quoted remedy, in August 2016. Southern Bakeries, LLC, 364 NLRB No. 64, 2016 WL 4157598 at *10 (2016). We affirmed this portion of the Board's order in September 2017, concluding there was sufficient evidence to support the Board's conclusion that Marks Briggs's discipline was motivated by union animus. Southern Bakeries, LLC v. N.L.R.B., 871 F.3d 811, 825 (8th Cir. 2017).

In October 2015, there was still no recognized union at the Southern Bakeries facility. On October 8, the newly hired bread line production manager, Tony Hagood, saw Marks Briggs pick up and eat a piece of topping off a loaf of apple bread coming down the line. Hagood had advised employees shortly after he was hired that this type of "grazing" would no longer be tolerated, as it was contrary to food safety law and practice. Hagood submitted a disciplinary action form to the human resources department describing Marks Briggs's violation of this rule. HR manager Eric McNiel, newly hired on October 12, consulted with Ledbetter, who informed McNiel of Marks Briggs's 2013 final written warning. The two decided to issue her a "Last Chance Agreement," the functional equivalent of a final written warning. The October 16, 2015 Last Chance Agreement stated:

899 (1st Cir. 1981), cert. denied, 455 U.S. 989 (1982), and upheld by the Supreme Court in N.L.R.B. v. Transp. Mgmt. Corp., 462 U.S. 393, 401-03 (1983). Its use in deciding the issue in this case is not disputed.

After a management review of the facts surrounding the incident and your previous record for rule violations, your behavior does call for immediate discharge; however, management has considered all extenuating circumstances, including 24 years of service. Management believes a "Last Chance Agreement" is more appropriate.

In January 2016, Southern Bakeries met with each bread line employee, including Marks Briggs, to discuss the tone of interpersonal relationships in the workplace; each employee signed a form acknowledging receipt of a copy of facility rules and the policy against harassment. On February 8, with the bread line stopped, Marks Briggs left her work station without informing a supervisor and walked to a wash stand in another area. She walked close by another employee and their shoulders bumped. The other employee complained that Marks Briggs bumped her on purpose and joked about it when she returned to her work station. Marks Briggs claimed the other employee bumped into her. McNiel interviewed the involved parties. On February 19, McNiel and Hagood presented Marks Briggs a termination notice stating she was being discharged for leaving her work area without permission, provoking a fight or creating a hostile or unpleasant workplace, and disobeying a supervisor's instruction (the January 2016 meeting). The notice further stated:

A review of your work history includes two (2) final warnings "Last Chance Agreements" regarding your violation[s] . . . on May 30, 2013 and . . . on October 16, 2015 . . . . After a management review of the facts surrounding the incidents . . . and taking into account the "Last Chance Agreements" given to you on May 30, 2013 . . . and October 17, 2015 . . . your behavior is unacceptable and your employment is terminated.

Hagood wrote "do not rehire" on Marks Briggs's internal termination document.

The ALJ concluded that Southern Bakeries violated the NLRA when it disciplined Marks Briggs in October 2015 and then discharged her in February 2016:

Both the Last Chance Warning given to Marks Briggs and her discharge violate Section 8(a)(3) and (1) because they relied on the prior unlawful warning given to her on May 30, 2013, and because [Southern Bakeries] failed to establish it would have disciplined her in the same way in October 2015 or . . . discharged her absent that reliance.

With regard to the February 2016 interaction . . . [Southern Bakeries] had a reasonable basis for concluding that Marks Briggs intended to antagonize [the other employee]. . . . However, the record does not show that [Southern Bakeries] had sufficient cause, absent reliance on the illegal warning, to discharge Marks Briggs. . . . [T]he physical contact between the two was so insignificant that [an employee] standing right next to them, did not even notice it.

\* \* \* \* \*

The record belies [Southern Bakeries'] suggestion that Hagood's notation was an inadvertent error made without discriminatory intent. . . . I reject this explanation and find that the "Do Not Rehire" notation was discriminatorily motivated.

On appeal, the Board upheld the ALJ's decision that Southern Bakeries violated Sections 8(a)(3) and (1):

An employer's imposition of discipline violates Section 8(a)(3) and (1) if it relies on prior discipline that violates Section 8(a)(3) and (1), and the employer fails to show it would have issued the same discipline even without reliance on the prior unlawful discipline. . . . On their face, the October 2015 last chance agreement, the February 2016 discharge, and the subsequent do-no-rehire notation all partially relied on the unlawful May 2013 last chance agreement. . . . [Southern Bakeries] failed to prove that it would have issued the same discipline even had it not relied on the unlawful May 2013 last chance agreement.

-5-

Section 8 (a)(4) of the NLRA provides that it is an unfair labor practice "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter," as Marks Briggs did in 2013 and 2014. The Board reversed the ALJ's decision that Southern Bakeries also violated Section 8(a)(4) in disciplining Marks Briggs in 2015 and 2016 because "[t]he General Counsel failed to make the showing of animus necessary to prove Section 8(a)(4) violations."

**B. Discussion.** "We will enforce the Board's order as long as the Board correctly applied the law, and its findings are supported by substantial evidence, even if we might have reached a different decision on de novo review." Miklin Enters., Inc. v. N.L.R.B., 861 F.3d 812, 826 (8th Cir. 2017) (en banc; quotation omitted). The Board concluded that Southern Bakeries violated Sections 8(a)(1) and (3) because it relied on an unlawful May 30, 2013 final written warning in imposing last clear chance discipline on Marks Briggs in October 2015, discharging her in February 2016, and marking her not eligible for rehire. There are two serious problems with the Board's legal analysis.

First, the May 2013 final written warning was not "unlawful" when the events in question took place. In the prior unfair labor practice proceedings, the ALJ in July 2014 declared it unlawful and proposed as a remedy that Southern Bakeries remove any reference to this unlawful written warning from its personnel files and notify Marks Briggs it will not be used against her "[w]ithin 14 days from the date of *the Board's Order*." Southern Bakeries' appeal from that decision was pending until the Board upheld it in August 2016, and Southern Bakeries' petition for review was pending in this court until September 2017. The Board has broadly asserted that "a legitimate basis for discharge or suspension cannot be established by unlawful disciplinary warnings." Dynamics Corp., 296 NLRB 1252, 1256 (1989), enforced, 928 F.2d 609 (2d Cir. 1991), cited in N.L.R.B. v. RELCO Locomotives, Inc., 734 F.3d 764, 787 (8th Cir. 2013). But neither the Board's opinion nor its brief to this court cited a prior case where this principle was applied to "unlawful" discipline that

was still in litigation when the subsequent discipline was imposed. Here, the Board faulted new Southern Bakeries managers for taking into account prior discipline that should have been "expunged" from its records. But there was no order to expunge in October 2015 and February 2016, and the ALJ's decision that the prior discipline violated Section 8(a)(1) or 8(a)(3) was being contested on appeal. It was legal error for the ALJ and the Board to base their decision in this case *entirely* on this factor.

Second, in applying its *per se* rule in this case, the Board lost sight of the General Counsel's burden to prove an 8(a)(1) and 8(a)(3) violation. Section 8(a)(3) requires proof that the employer disciplined or discharged an employee "to encourage or discourage membership in any labor organization." "To prove discriminatory discharge [under the Wright Line framework], the General Counsel must establish that the employee was discharged for his union activities or membership -- that but for his union activities or membership, he would not have been discharged." Nicholas Alum., LLC v. N.L.R.B., 797 F.3d 548, 554 (8th Cir. 2015) (quotation omitted). "There must be a nexus between the union activity and the discharge." Id. at 555 (Melloy, J., concurring). Absent proof of this nexus, the General Counsel fails to establish a prima facie case, and the employer need not prove that it would have taken the same action even in the absence of the employee's protected activity. This format preserves the employer's right under the NLRA to suspend or discharge an employee "for cause." 29 U.S.C. § 160(c); see Transp. Mgmt. Corp., 462 U.S. at 401.

This essential principle was satisfied in the "prior unlawful discipline" cases on which the Board relied. In Dynamics Corp., because the employer applied a progressive discipline system, the subsequent discharges were necessarily based on earlier discipline that had unlawfully reflected union animus. 296 NLRB at 254; 928 F.2d at 613-14. In RELCO, the employee's discharge was premised on a performance review that was discriminatorily "embellished" after his pro-union testimony. 734 F.3d at 787-88.

By contrast, in this case there was no showing of a nexus between Marks Briggs's protected union activity in 2013 and 2014 and the discipline and discharge imposed in late 2015 and early 2016. There was no recognized union, and the Board expressly found that the General Counsel "failed to make the showing of animus necessary to prove Section 8(a)(4) violations." Southern Bakeries' decisionmakers, McNiel and Hagood, were new hires in 2015; the General Counsel introduced no evidence contradicting their testimony that they were unaware of Marks Briggs's prior involvement in protected union activity. Though Ledbetter made them aware of the 2013 final written warning, that warning was relevant prior discipline until the Board declared it unlawful. The ALJ acknowledged that Marks Briggs was disciplined for employee rule violations, discipline that Southern Bakeries had the right to impose unless motivated by union animus. Moreover, the violations were of rules proscribing individual employee misconduct, conduct unrelated to collective employee actions guaranteed by Section 7 and protected by Section 8(a)(1) even in the absence of a recognized union, like the planned collective work stoppage at issue in Greater Omaha Packing Co., Inc. v. NLRB, 790 F.3d 816, 821 (8th Cir. 2015).

Thus, on this record, we conclude the General Counsel failed to present evidence of the nexus between Marks Briggs's severe discipline and discharge and her protected union activity years earlier that was necessary to establish a prima facie case that Southern Bakeries violated Sections 8(a)(1) and (3). If such nexus had been established with evidence showing that the prior final written warning, though relevant, should be disregarded because Southern Bakeries knew it was unlawful, we would not question the Board's decision that Marks Briggs would have received "some lesser disciplinary measure" absent reliance on that prior discipline. But applying Wright Line, the Board erred in concluding that the prior final written warning, *standing alone*, satisfied the General Counsel's burden to prove a prima facie case of discriminatory discipline. As the Board has not proffered an alternative theory or requested a remand, we grant Southern Bakeries' petition for review in part and deny the Board's cross-petition for enforcement of paragraphs 1(c) and 2(a)-(e)

of its Order.  See Multimedia KSDK, Inc. v. N.L.R.B., 303 F.3d 896, 900 (8th Cir. 2002) (en banc).  We also deny enforcement of paragraph 2(f) unless the Appendix attached to the Order is modified so as to end after the second "WE WILL NOT" provision.

## II.  The Muldew Violation.

On January 15, 2016, Southern Bakeries employee Cheryl Muldew was suspended pending an investigation into a complaint that she threatened another employee, and for eating on the production line.  On January 19, McNiel gave Muldew a last chance agreement; on January 27, she was terminated after allegedly threatening the employee who reported the first threat.  Muldew filed unfair labor practice charges contesting her discipline and discharge.  The charges included the allegation that McNiel initially told Muldew she was not to discuss her discipline with other employees and later told her she was discharged for discussing her previous discipline with other employees.  The General Counsel's unfair labor practice complaint did not challenge Muldew's discipline and discharge but did allege that Southern Bakeries violated Section 8(a)(1) by telling employees that their discipline and company investigations are confidential and that they were being discharged for discussing their discipline with other employees.

At the evidentiary hearing Muldew repeated her allegations that McNiel told her not to discuss her discipline and that she was discharged in part for discussing her discipline with other employees.  McNiel denied those allegations.  The evidence included a discharge document; the section detailing conduct that resulted in Muldew's termination referenced her discussing a "confidential situation from the previous week."  The ALJ found that the "confidential situation" could only refer to the January 19 last-clear-chance discipline.  The ALJ credited Muldew's testimony regarding what McNiel told her and found that, because McNeil's confidentiality instruction was not part of Southern Bakeries' fact finding investigation, it was made

-9-

without a legitimate and substantial business justification. Based on these findings, the ALJ concluded that Southern Bakeries violated Section 8(a)(1) by telling Muldew not to discuss her discipline and that she was being discharged in part for doing so. On appeal, the Board adopted the ALJ's findings and conclusion. The Board's final Order directs Southern Bakeries to cease and desist from telling employees they may not discuss their discipline with other employees and from telling employees they have been disciplined for doing so.

Section 8(a)(1) of the NLRA provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]." The inquiry under § 8(a)(1) is objective, asking "whether, considering the entire factual context, the employer's conduct reasonably tends to interfere with the employees' exercise of their section 7 rights." Miklin, 861 F.3d at 828 (quotation omitted). It is "settled Board precedent . . . that employees have a protected right to discuss discipline or disciplinary investigations with fellow employees." Inova Health Sys. v. N.L.R.B., 795 F.3d 68, 85 (D.C. Cir. 2015). Under this precedent, "[a]n employer may prohibit such discussion only when a 'substantial and legitimate business justification' outweighs the 'infringement on employees' rights.'" Id., quoting Caesar's Palace, 336 N.L.R.B. 271, 272 (2001).

On appeal, Southern Bakeries does not challenge the Board's legal rule, nor argue that it presented evidence establishing a "substantial and legitimate business justification" for telling Muldew not to discuss her suspension and that she was discharged in part for doing so. Rather, Southern Bakeries argues that the Board erred in adopting findings that credited "Muldew's self-serving account of what McNiel told her during their meetings," and disregarded contrary testimony by McNiel that "was corroborated by the testimony of at least three disinterested employees."

"The question of credibility of witnesses is primarily one for determination by the trier of facts, and findings in this area are reversed only in extraordinary circumstances." Greater Omaha Packing, 790 F.3d at 820 (quotation omitted). "[W]e afford great deference to the Board's credibility determinations, and will not overturn them unless they shock the conscience." Int'l All. of Theatrical Stage Emps. v. N.L.R.B., 885 F.3d 1123, 1127 (8th Cir. 2018) (quotation omitted). Southern Bakeries cannot clear this high hurdle. The ALJ's credibility findings were based on a careful review of the testimony, supported by the Muldew discharge document. The findings are far from conscience-shocking, and no extraordinary circumstance warrants reversing the Board's order to cease and desist from telling employees not to discuss their discipline with other employees, or that they are being disciplined for doing so. Accordingly, we enforce sections 1(a) and (b) of the Board's Order.

For the forgoing reasons, we grant in part and deny in part Southern Bakeries' petition for review and the Board's cross-petition for enforcement of its Order.

_____